**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

RICHARD M. TALBERT, #1150117,

                Petitioner,

v.                                       ACTION NO. 2:13cv199

HAROLD CLARKE,
Dir. VDOC,

                Respondent.

**UNITED STATES MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. The Court recommends denying the petition for writ of habeas corpus.

## I. STATEMENT OF THE CASE

### A.  Procedural Background

Petitioner Richard M. Talbert was detained pursuant to convictions, following a bench trial in the Circuit Court for Middlesex County on March 22, 2010, for assault on a law enforcement officer, refusal to submit to a blood or breath test, speeding 39 in a 25 mile per hour zone, and second offense driving under the influence. *Commonwealth v. Talbert,*

CR09000186-CR09000189 (Va. Cir. Ct. Apr. 21, 2010).[1]   Petitioner was sentenced to five years, twelve months and ninety days in prison with two years and six months suspended.

Charles Hadden, Esq., appointed to represent Petitioner during his direct appeal, filed a Notice of Appeal on June 7, 2010.   On direct appeal, Petitioner alleged (1) the trial court erred in ruling the evidence was sufficient to prove Petitioner was guilty of second offense DUI within five years, refusal to take a blood or breath test, speeding, and assault and battery on a police officer, and (2) the trial court erred in denying Petitioner's motion to dismiss for lack of a speedy trial. Petitioner's direct appeal to the Virginia Court of Appeals was denied on January 11, 2011. *Commowealth v. Talbert*, No. 1199-10-2 (Va. Ct. App. Jan. 11, 2011).   Petitioner's petition for appeal to the Supreme Court of Virginia was refused on July 28, 2011. *Commonwealth v. Talbert*, No. 110465 (Va. July 28, 2011).

Petitioner then filed a petition for a writ of habeas corpus with the Supreme Court of Virginia on June 21, 2012. *Talbert v. Clarke*, No. 121047 (Va. June 21, 2012).   The Supreme Court of Virginia dismissed Petitioner's petition on January 9, 2013, finding many claims were barred under *Slayton v. Parrigan*, 205 S.E. 680 (Va. 1974), and denying the remaining claims of ineffective assistance of counsel on the merits. Petitioner's petition for rehearing was denied on March 7, 2013. *Talbert v. Dir. of Dept. of Corrections*, No. 121047 (Va. Jan. 9, 2013).

Petitioner filed a petition for writ of habeas corpus in this Court on April 15, 2013, along with a Motion for the Judicial Notice of Petitioner's Assertion of His Actual Innocence.   ECF Nos. 1, 2.   Petitioner filed an Affidavit on April 17, 2013. ECF No. 3.   Respondent filed a Rule 5 Answer and Motion to Dismiss on May 20, 2013. ECF Nos. 7-9. Petitioner filed his Response to

---

[1] Petitioner was released from the custody of the Virginia Department of Corrections on November 21, 2013. Notice of Change of Address, ECF No. 21.   Due to a portion of Petitioner's sentence being suspended, he meets the custody requirement necessary to proceed with his § 2254 habeas petition. *Sammons v. Rodgers*, 785 F.2d 1343, 1345 (5th Cir. 1986) (citing *Braden v. Thirtieth Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973) and 17 Wright, Miller, Cooper, FEDERAL PRACTICE & PROCEDURE, § 4262).

the Motion to Dismiss on May 23, 2013. ECF No. 11.   On the same day, Petitioner filed a Motion for Leave to Submit a Brief in Support of Allegations, with a brief attached. ECF No. 12. Petitioner filed a second Motion for Leave to Submit a Brief in Support of Allegations with a brief attached on June 7, 2013. ECF No. 15.   On December 10, 2013, Petitioner filed a Motion for Leave to Submit December 23, 2009 Transcript. ECF No. 22.   On January 21, 2014, Petitioner filed a Motion for Leave to Submit Newly Discovered Evidence. ECF No. 26.   Petitioner's motions to supplement the record have been granted, and the additional materials have been filed.

Petitioner's request for an evidentiary hearing is DENIED, as purely legal issues are presented and the Court may adequately resolve the issues as presented in the briefs and the record. *See* Rule 8 of the Rules Governing Section 2254 Cases.   Accordingly, this matter is ripe for review.

## B.   Factual Background

On February 5, 2009, Petitioner was pulled over by Deputy A.J. Miller of the Middlesex County Sheriff's Office for driving 39 miles per hour in a 25 mile per hour zone. Transcript of Bench Trial at 13, *Commonwealth v. Talbert*, CR09000186-CR09000189 (Va. Cir. Ct. Mar. 22, 2010) ("Trial Tr.").   Petitioner failed a number of field sobriety tests, and was placed under arrest. Trial Tr. 20-24.   Petitioner became verbally abusive, though he physically complied with the officer. Trial Tr. 23-24.

After arriving at the sheriff's office, Deputy Miller attempted to read Petitioner the implied consent form. Trial Tr. 24.   Petitioner interrupted with abusive language, would not be quiet, and refused to submit to a breath test. Trial Tr. 24-25.   Petitioner asked to sit in a holding cell "for a couple of hours" to think about whether he wanted to take the breath test. Trial Tr. 25.   Petitioner was handcuffed behind his back, and placed on a bench while Deputy Miller, seated at a desk

3

nearby, filled out the criminal complaint form for refusal to take a breath test. Trial Tr. 26. Petitioner charged across the room towards Deputy Miller. Trial Tr. 26.   Deputy Miller attempted to force Petitioner to sit, so that he could be handcuffed to the bench. Trial Tr. 26-28.   During the scuffle, Petitioner bit Deputy Miller on his right shoulder, tearing his uniform. Trial. Tr. 28-29. Deputy Miller was wearing a bullet proof vest, and the skin was not broken, but his shoulder was swollen and discolored. Trial Tr. 28-29.   A photograph of the right shoulder was admitted into evidence at trial. Trial Tr. 33-34. At some point during the scuffle, Lieutenant James Ellis entered the room. Trial Tr. 26.   Deputy Miller placed Petitioner in a modified headlock, but Petitioner remained agitated until Lieutenant Ellis sprayed him with pepper spray. Trial Tr. 28-29.

Petitioner was charged with assault on a law enforcement officer, refusal to take a blood or breath test, speeding, and second offense DUI.   He was released on February 6, 2009, on a recognizance bond.   On March 16, 2009, Petitioner requested appointment of counsel in Middlesex General District Court, and Richard West, Esq., was appointed to represent him.   On June 1, 2009, a preliminary hearing was held in General District Court for the County of Middlesex on Petitioner's assault charge.   Petitioner was indicted on July 27, 2009, for felony assault and battery on a law enforcement officer, and trial was set on all charges in the Circuit Court for the County of Middlesex for October 21, 2009.   On October 21, 2009, Petitioner's counsel Richard West, Esq., moved for a continuance of the trial and for substitution of counsel. The motions were granted, and the trial was continued to December 2, 2009.   Jason Atkins, Esq., was substituted as court appointed counsel for Petitioner. On December 2, 2009, Mr. Atkins moved for a continuance of the trial.   The motion was granted, and the trial was continued to January 11, 2010.   Petitioner placed his signature on the order indicated he was signing "under duress."

Petitioner filed a Motion for Appointment of Competent Counsel with an affidavit in support on December 21, 2009.   A hearing was held on the motion on December 23, 2009. During the hearing, Mr. Atkins's motion to withdraw as counsel was denied.   Further, the Commonwealth's attorney and Mr. Atkins made a joint motion for a mental evaluation of Petitioner to determine his competency to stand trial and to determine his sanity at the time of the offense.   A commitment order was entered, and Petitioner was taken into custody for the evaluation.   The case was continued to January 29, 2010.

On January 20, 2010, Petitioner appealed the denial of his motion for appointment of competent counsel to the Court of Appeals of Virginia.   The appeal was dismissed on March 11, 2010, without prejudice to Petitioner's appealing from the final order in his case.

On January 29, 2010, Petitioner was found competent to stand trial, and was released on pre-trial supervision.   His trial was set for March 22, 2010.   On February 4, 2010, Petitioner, proceeding *pro se* filed a motion for discovery, a motion to dismiss for violation of the speedy trial act, and a petition for alias writ regarding the Commonwealth's failure to produce any potential video recording from the Sheriff's office on the night of Petitioner's arrest.   Mr. Atkins, signing as counsel for Petitioner, requested a hearing on the motions.

On March 17, 2010, a hearing was held on Petitioner's motions.   Petitioner appeared with Mr. Atkins as stand-by counsel. Hr'g Tr. 3, March 17, 2010.   Petitioner's motion to dismiss for lack of speedy trial was denied. Hr'g Tr. 11.   Petitioner's motion for discovery was granted in part (Hr'g Tr. 21, 24, 32), and his motion for a petition for alias writ was denied after an official from the county testified about the video recording system and retention policy. Hr'g Tr. 34-40.

Petitioner's bench trial was held on March 22, 2010.   Petitioner indicated he was going to represent himself, and Mr. Atkins was present serving as stand-by counsel. Trial Tr. 5.[2]   The following colloquy took place:

> Court:        Have you had enough time to talk with Mr. Atkins about any defenses that you might have to the charges?
>
> Petitioner:   Yes, sir, I believe I have.
> . . .
> Court:        Are you entirely satisfied with the services of standby counsel?
>
> Petitioner:   At this time, yes, sir.

Trial Tr. 8-9.   Petitioner was found guilty of all charges.   At Petitioner's sentencing, held on May 24, 2010, Mr. Atkins was present as stand-by counsel.

## C.   Grounds Alleged

Petitioner asserts that he is entitled to relief under 28 U.S.C. § 2254 for the following reasons:

> Ground (1) his constitutional rights were violated when "State/Actors" denied his request for transcripts;[3]
> Claim (1) prosecutorial misconduct as a result of the prosecutor's infringement of his constitutional rights, privileges, and immunities;
> (2) prosecutorial misconduct as a result of the prosecutor's failure to act "with the required competency of an attorney" on behalf of the Commonwealth as required by Part Six of the Rules of the Supreme Court of Virginia;
> (3) prosecutorial misconduct as a result of the prosecutor's failure to "inquire into and analyze the factual and legal element(s) of the matter" during Petitioner's prosecution;

---

[2] The "Felony Order" entered April 21, 2010, indicates in the first paragraph that Jason Atkins, Esq., was present "for assistance purposes only," and in the fourth paragraph that, "[t]he Court certifies that at all times during the trial of this case, the defendant was personally present and his attorney was likewise personally present and capably represented the defendant."

[3] "Ground 1" represents the only "ground" presented in the instant petition that was not previously presented in Petitioner's state habeas petition to the Supreme Court of Virginia.

6

(4) prosecutorial misconduct as a result of the prosecutor's decision to conduct the DUI and refusal hearings simultaneously, which prejudiced Petitioner;

(5)-(6) prosecutorial misconduct as a result of the prosecutor's failure to comply with the "professional responsibilities and obligation(s)" of his office;

(7) prosecutorial misconduct as a result of the prosecutor's violation of Petitioner's due process rights;

(8) prosecutorial misconduct as a result of the prosecutor's testifying against Petitioner "in violation of the 1984 Bail Reform Act;"

(9) prosecutorial misconduct as a result of the prosecutor's act of disobeying the trial court's ruling by "directly argu[ing] against this Petitioner gaining access to evidence for his defense;"

(10) prosecutorial misconduct as a result of the prosecutor's failure to advise Petitioner that bail could be revoked or that "any psychological evidence was going to be alleged against him;"

(11) prosecutorial misconduct as a result of the prosecutor's attempt to manipulate the court into incarcerating Petitioner;

(12) prosecutorial misconduct as a result of the prosecutor's attempt to "induce" Petitioner's counsel to "manipulate" the court into incarcerating Petitioner;

(13)-(14) prosecutorial misconduct as a result of the prosecutor's attempt to violate the attorney-client relationship between Petitioner and counsel;

(15) prosecutorial misconduct as a result of the prosecutor's attempt to control counsel during pre-trial hearings;

(16) prosecutorial misconduct as a result of the prosecutor's abuse of his power to isolate and influence Petitioner;

(17) prosecutorial misconduct as a result of the prosecutor's coercion and intimidation of Petitioner to prevent him from contacting other authorities "to report violations of law;"

(18) prosecutorial misconduct as a result of the prosecutor's obstruction of the discovery process;

(19) prosecutorial misconduct as a result of the prosecutor's act of taking advantage of Petitioner because he represented himself.

(20)-(22) and (56) prosecutorial misconduct as a result of the prosecutor's decision to permit Deputies Miller and Ellis to testify untruthfully;

(23) prosecutorial misconduct as a result of the prosecutor's manipulation and misstatement of evidence during closing arguments;

(24) prosecutorial misconduct as a result of the prosecutor's failure to determine if Petitioner requested counsel when Deputy Ellis testified he overheard Petitioner repeating his Miranda rights to himself;

(25) prosecutorial misconduct as a result of the prosecutor's failure to correct the trial court's misstatement of the evidence;

(26) prosecutorial misconduct as a result of the prosecutor's use of Petitioner's repetition of his Miranda rights against him at trial, despite the fact that "the very core [of those rights] consists of the right to remain silent;"

(27) prosecutorial misconduct as a result of the prosecutor's failure to act on the fact that he knew Deputies Miller and Ellis failed to provide Petitioner with the opportunity to consult with an attorney;

(28) prosecutorial misconduct as a result of the prosecutor's collusion with the trial court to convict Petitioner;

(29) prosecutorial misconduct as a result of the prosecutor's misconduct in seeking to convict Petitioner despite knowing Petitioner did not have counsel when he refused a blood or breath test; further, the prosecutor violated the separation of powers clause by telling the trial court the law;

(30) prosecutorial misconduct as a result of the prosecutor's act of certifying Deputy Miller as a law enforcement officer when Petitioner cross-examined the deputy as to his qualifications;

(31) prosecutorial misconduct as a result of the prosecutor's failure to provide Petitioner with Deputy Miller's expected testimony, in written form, prior to trial;

(32) prosecutorial misconduct as a result of the prosecutor's failure to correct the testimony of Deputies Miller and Ellis, which he knew would harm Petitioner's chances of success on appeal;

(33) prosecutorial misconduct as a result of the prosecutor's failure to correct Deputy Miller's inconsistent testimony about his actions at the time Petitioner bit him;

(34) prosecutorial misconduct as a result of the prosecutor's misstatement, on appeal, of the testimony of Deputies Miller and Ellis;

(35) prosecutorial misconduct as a result of the prosecutor's failure to disclose during trial that the testimony of the deputies was contradictory and "pure fabrication;"

(36) prosecutorial misconduct as a result of the prosecutor's decision to pursue criminal charges against Petitioner when he knew the same would not survive a motion to strike;

(37) prosecutorial misconduct as a result of the prosecutor's failure to provide Petitioner with exculpatory evidence related to Deputy Ellis and Petitioner's theory of self-defense;

(38) prosecutorial misconduct as a result of the prosecutor's failure to act when Deputy Miller admitted he lied to Petitioner on the night of his arrest;

(39) prosecutorial misconduct as a result of the prosecutor's failure to act when he learned of Deputy Miller's "impossible explanation . . . of the alleged physical attributes he ascribes to his 'use of force by any means necessary;'"

(40)(a) prosecutorial misconduct as a result of the prosecutor's failure to advise the court how Petitioner came to represent himself;[4]

(40)(b) Petitioner was denied the effective assistance of counsel because counsel failed to advise the trial court how Petitioner came to represent himself;

(41) prosecutorial misconduct as a result of the prosecutor's failure to "ascertain the truth of the controversy;"

(42) prosecutorial misconduct as a result of the prosecutor's reliance upon intrinsic fraud, obstruction, and misrepresentation of the evidence to secure Petitioner's conviction;

(43) prosecutorial misconduct as a result of the prosecutor's failing to disclose the inconsistent and improbable explanation by the deputy regarding the pushing and shoving of Petitioner when petitioner was a pre-trial detainee;

(44) prosecutorial misconduct as a result of the destruction of evidence when the deputy washed the bullet-proof vest and shirt;

(45) prosecutorial misconduct as a result of the prosecutor's failure to address an "opposed version of facts" at trial;

(46) prosecutorial misconduct as a result of the prosecutor's failure to advise the trial court that the evidence presented at trial differed from that presented at the preliminary hearing;

(47) prosecutorial misconduct as a result of the prosecutor's failure to advise the deputies of facts and "communication(s) [from] another party" that would have affected resolution of the matter;

(48) prosecutorial misconduct as a result of the prosecutor's reliance upon Petitioner's refusal to submit to a blood or breath test, which was in violation of his Fifth Amendment rights;

(49)(a) prosecutorial misconduct as a result of the prosecutor's failure to investigate Petitioner's claims during the pre-trial

---

[4] In the opinion issued by the Supreme Court of Virginia denying Petitioner's state habeas petition (ECF No. 9-1), and in the Respondent's brief in this Court (ECF No. 9), several claims are referred to as "a portion of (40)" and "another portion of (40)."   To simplify, the claims have been labeled (a) and (b) in this Report and Recommendation.

hearing that a document was falsified, which the prosecutor impermissibly used to revoke Petitioner's bail and support a request for a psychological evaluation;

(49)(b) Petitioner was denied the effective assistance of counsel because counsel failed to investigate his claim that a document had been falsified;

(50) prosecutorial misconduct as a result of the prosecutor's failure to produce video of Petitioner's arraignment and concealment of Petitioner's request for it;

(51) prosecutorial misconduct as a result of the prosecutor's reliance upon inconsistent testimony from the deputies "in different ways and at different times" to convict Petitioner;

(52) prosecutorial misconduct as a result of the prosecutor's intention to convict Petitioner of a DUI when there was no "argument supporting any evidence" for his conviction;

(53) prosecutorial misconduct as a result of the prosecutor providing testimony as an expert witness during sentencing and misrepresenting medical conclusions and diagnoses;

(54) prosecutorial misconduct as a result of the prosecutor's willingness to allow the trial court to interfere in Petitioner's cross-examination of Deputy Miller;

(55) prosecutorial misconduct as a result of the prosecutor's description of Petitioner as "not normal" before the trial court;

(57) prosecutorial misconduct as a result of the prosecutor's implication during sentencing that Petitioner had not accepted responsibility for his criminal actions;

(58) prosecutorial misconduct as a result of the prosecutor's failure to instruct the court, in the "appearance of justice," that "Petitioner, being without [c]ounsel at trial, should have been offered counsel again;"

(59) prosecutorial misconduct as a result of the prosecutor's failure to act when an EMS worker and Deputy Miller testified they did not smell alcohol on Petitioner;

(60) prosecutorial misconduct as a result of the prosecutor's use of an officer to threaten Petitioner after he filed a Freedom of Information Act request, as well as the prosecutor's failure to seriously consider Petitioner's claim that his life was in danger for exposing corruption in Middlesex County;

(61) prosecutorial misconduct as a result of the prosecutor's failure to provide Petitioner with evidence concerning Deputy Miller's prior bad acts;

(62) prosecutorial misconduct as a result of the prosecutor's attempt to convict Petitioner despite a lack of evidence;

(63) prosecutorial misconduct as a result of the prosecutor's deliberate violation of Petitioner's speedy trial rights;

10

(64) and (92)(a) prosecutorial misconduct in that the prosecutor's action violated Petitioner's civil rights in violation of 28 U.S.C. §§ 241 and 242;

(65) prosecutorial misconduct as a result of the prosecutor's claim during closing argument that Petitioner was "combative from the beginning;"

(66), (67),[5] (69) and (70) prosecutorial misconduct as a result of the prosecutor's violation of Petitioner's constitutional rights;

(71)[6] prosecutorial misconduct as a result of the prosecutor's failure to report the collusion between the Commonwealth's witnesses, the court and Petitioner's standby counsel;

(75) and (76) Petitioner was denied the effective assistance of counsel because counsel failed to act with the requisite level of competency required by the "Disciplinary Rules" and further failed to take an "appropriate course of action" for Petitioner;

(77) Petitioner was denied the effective assistance of counsel because counsel compelled Petitioner to go forward with a hearing on December 2, 2009, despite the fact that counsel was not prepared;

(78) Petitioner was denied the effective assistance of counsel because counsel failed to act when the trial court admonished Petitioner for acts and omissions that were not committed by Petitioner;

(79) Petitioner was denied the effective assistance of counsel because counsel was indifferent toward his case;

(80) Petitioner was denied the effective assistance of counsel because counsel induced Petitioner to proceed with a hearing on December 22, 2009, without advising Petitioner of his agreement with the prosecutor to have Petitioner incarcerated in violation of his due process rights;

(81) the trial court erred when it rejected Petitioner's motion for appointment of new counsel and claims of fraud;

(82), (83) and (86) Petitioner was denied the effective assistance of counsel because counsel "abandoned" Petitioner during a December 23, 2009 hearing, by testifying that Petitioner should be incarcerated;

(84) and (87)(a) the trial court erred in revoking Petitioner's bail and ordering a competency evaluation when there was no probable cause or evidence to support either action;

---

[5] In paragraph 68, Petitioner alleges in general that "all of the foregoing allegations . . . are grounds for relief . . .;" therefore, there is no substantive claim 68 contained in the petition. Pet. 25.

[6] In paragraphs 72-74, Petitioner reserves the right to amend his pleadings, and alleges generally that his court appointed counsel, Jason Atkins, Esq., abridged his rights and denied him effective assistance of counsel. Pet. 26-27. The following paragraphs list the reasons Petitioner is alleging ineffective assistance of counsel.  Therefore, there are no substantive claims 72-74.

(85) Petitioner was denied the effective assistance of counsel because counsel "misdirect[ed] the Court" to deflect allegations that counsel perjured himself at the December 2, 2009 hearing;

(87)(b) Petitioner was denied the effective assistance of counsel because counsel manipulated the trial court into incarcerating him for purposes of a competency evaluation;

(88) Petitioner was denied the effective assistance of counsel because counsel failed to investigate his case;

(89) prosecutorial misconduct as a result of the prosecutor's use of "the judicial machinery" to deny Petitioner access to evidence because of Petitioner's "efforts to expose or reveal the financial fraud in Middlesex County;"

(90)[7] Petitioner was denied the effective assistance of counsel because counsel conspired with the prosecutor to induce the trial court to incarcerate Petitioner without due process;

(92)(b) Petitioner was denied the effective assistance of counsel because counsel violated his constitutional rights pursuant to 18 U.S.C. §§ 241 and 242 when he acquiesced to being standby counsel;

(93) Petitioner was denied the effective assistance of counsel because counsel did not communicate with him and the conflict of interest was so great that it could not be reconciled;

(94) and (95)[8] Petitioner was denied the effective assistance of counsel because counsel's actions were contrary to his duties to Petitioner, and counsel was the proximate cause of Petitioner's injuries;

(97), (98) and (99) Petitioner was denied the effective assistance of counsel when counsel ignored information during the preliminary hearing that demonstrated Petitioner's innocence, specifically Deputy Miller's testimony, which was "grossly improbable;"

(100) the trial court erred in its "imperative duty" to uphold the law;

(101) the trial court erred by failing to take corrective measures after it learned of "prejudicial circumstances" and failing to eliminate the resulting adverse effects;

(102) the trial court erred by rehabilitating Deputy Miller;

(103) the trial court erred by failing to state its reasons for convicting Petitioner;

---

[7] In paragraph 91, Petitioner alleges Mr. Atkins acquiesced to being court-appointed counsel.  In paragraph 92, Petitioner alleges he was injured as a result.  Consequently, there is no substantive claim numbered 91.

[8] Paragraph 96 states, "[t]he allegation(s), by this Petitioner, directly places or puts a burden on this petition, with regard to the fundamental fairness issue(s) in due process, that he has been denied."  Therefore, there is no substantive claim numbered 96.

(104) the trial court erred by interfering with Petitioner's cross-examination of Deputy Miller;

(105) the trial court erred by ordering certain testimony stricken from the trial transcript and certain evidence from the record;

(106) the trial court erred by misstating the evidence about whether Petitioner was interrogated by the police;

(107) the trial court erred by violating Petitioner's constitutional rights;

(108) the "[t]rial court's abuse of process[s], knowing 'defendant' without Counsel, and not conducting adequate questioning regarding issue of whether knowingly, willing and intelligently, at trial and at sentencing;"

(109)-(112) the police violated Petitioner's rights because Deputies Miller and Ellis did not have probable cause to stop Petitioner, failed to advise Petitioner of his Miranda rights, violated Petitioner's right to remain silent and to have counsel, assaulted Petitioner, falsified and destroyed evidence, and provided false testimony; and

(113) Petitioner was denied the effective assistance of counsel because appellate counsel "induce[d]" him to waive his right to counsel; obstructed Petitioner's access to transcripts, dated December 2, 2009, December 23, 2009, January 29, 2010, and, March 15, 2010; failed to consult with Petitioner regarding which issues to raise on appeal; failed to "investigate into Petitioner's present sentence regarding the actual amount of time he had to serve, before making critical judgments or decisions;" and, failed to correct or investigate missing portions of transcripts, which "bore directly on the outcome of trial."

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Claim Simultaneously Exhausted and Procedurally Defaulted

Petitioners can challenge a state's custody on grounds that the custody violates the "Constitution or laws or treaties of the United States" by filing a habeas petition pursuant to 28 U.S.C. § 2254. 28 U.S.C. § 2254(a).  However, the petitioner must first give the state an opportunity to consider the alleged errors occurring in the petitioner's trial and sentencing by exhausting the available state court remedies, or demonstrating the absence or ineffectiveness of

such remedies. 28 U.S.C. § 2254(b)(1); *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).   The exhaustion requirement is satisfied when the "essential legal theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court." *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993). As *Pruett* explains, "[t]his [exhaustion] requirement is strictly enforced, in the interests of giving the state courts the first opportunity to consider and, if necessary, correct the alleged constitutional errors in a person's conviction and sentencing." *Id.*   Exhaustion may be achieved either through direct appeal or in post-conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)); *see also Skipper v. French*, 130 F.3d 603, 610 n.4 (4th Cir. 1997).

In Ground (1), Petitioner asserts his constitutional rights were violated when state actors denied his request for transcripts. Pet. 6.   Ground (1) was not presented as a separate claim in Petitioner's state habeas petition.   Instead, Petitioner made a motion for discovery, which was submitted along with his habeas petition, in the Supreme Court of Virginia.   Because Petitioner did not present Ground (1) as a claim in his state habeas petition to the Supreme Court of Virginia, the highest court in Virginia, Ground (1) is simultaneously exhausted and procedurally defaulted.

Simultaneous exhaustion and default ". . . occurs when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). The procedural default doctrine provides that a claim will be deemed simultaneously exhausted and defaulted if state courts have not had the opportunity to review a claim and would now refuse to review the claim under an adequate and independent state procedural rule. *See Teague v. Lane*,

489 U.S. 288, 298 (1989); *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000).   A state rule is adequate where it is "regularly or consistently applied by the state court," and independent when it "does not depend on a federal constitutional ruling." *Mu'Min v. Pruett*, 125 F.3d 192, 196 (4th Cir. 1997) (citing *Johnson v. Mississippi*, 468 U.S. 578, 587 (1988); *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)).

Ground (1) is procedurally defaulted, because it was not brought as a separate claim in the state courts, and any attempt to raise it now would be barred as untimely under Virginia Code § 8.01-675.3 and as a successive petition under Virginia Code § 8.01-654(B)(2). *See also* Va. Sup. Ct. R. 5A:6; *Dorsey v. Angelone*, 544 S.E.2d 350, 352 (Va. 2001).   Under *Teague v. Lane*, this Court cannot consider claims that would be procedurally defaulted in state court if raised now, and thus Ground (1) is deemed procedurally defaulted in federal court. 489 U.S. at 298.   Accordingly, Ground (1) should be DENIED.

## B. Claims Procedurally Defaulted in Petitioner's State Habeas Proceeding

Similarly, this Court can not address the merits of Petitioner's exhausted claims if they were procedurally defaulted in state court. *See Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998).   A claim is procedurally defaulted when a state court refuses review of the claim under an adequate and independent state procedural rule. *Id.*; *see also Coleman v. Thompson*, 501 U.S. at 729 ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.").

When dismissing Petitioner's petition for a writ of habeas corpus, the Supreme Court of Virginia held that claims (1) through (39), claim (40)(a), claims (41) through (48), claim (49)(a), claims (50) through (67), claims (69) through (71), claim (81), claim (84), claim (87)(a), claim

15

(89), claim (92)(a), and claims (100) through (112) were procedurally defaulted pursuant to *Slayton v. Parrigan*, 205 S.E.2d at 682, because they presented "non-jurisdictional issues [which] could have been raised at trial and on direct appeal and, thus, [we]re not cognizable in a petition for a writ of habeas corpus." Ex. A to Resp. Br. in Supp. Mot. to Dismiss and Rule 5 Answer, ECF No. 9-1 ("Resp. Ex. A").   Under Virginia law, where a petitioner fails to object during trial, or raise an issue on direct appeal, they may not raise the issue in state habeas.   *Slayton v. Parrigan*, 205 S.E.2d at 682. The Fourth Circuit has held that *Slayton* constitutes an independent and adequate state procedural rule. *Fisher*, 163 F.3d at 844.   Consequently, these claims are procedurally defaulted.

Petitioner may only overcome procedural default and obtain federal review of the merits of his claims if he can demonstrate cause for the procedural default resulting in actual prejudice, or that failure to review the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. at 750. In order to overcome the procedural default in this case, Petitioner argues he is "actually innocent," a claim explicitly tied to the discovery of new evidence and the fundamental miscarriage of justice exception. *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *see* Motion for Judicial Notice of Petitioner's Actual Innocence and Affidavit, ECF Nos. 2 & 3. The Supreme Court has recognized that "[a]ctual innocence, if proved, serves as a gateway through which a petitioner may pass" to bring claims procedurally defaulted in state court.   *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013).   However, "claims of actual innocence are rarely successful," *Schlup*, 513 U.S. at 324, and "should not be granted casually."   *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998).

The standard of review is a demanding one.   It provides "the gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in

16

the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless

constitutional error.'"   *Perkins*, 133 S.Ct. at 1936 (quoting *Schlup*, 513 U.S. at 316).   In order to

demonstrate a fundamental miscarriage of justice, a petitioner must present new evidence to

support his claim of actual innocence, and "must show that it is more likely than not that no

reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at

327.

The new evidence must be "reliable evidence—whether it be exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented

at trial." *Id.* at 324.   Thus, to accompany any actual innocence claim, the petitioner must put

forward new, credible evidence that supports their assertion.   If a petitioner meets that burden, the

district court must then look to all evidence, "old and new, incriminating and exculpatory, without

regard to whether it would necessarily be admitted under rules of admissibility that would govern

at trial, and determine[] whether the petitioner has met the standard for a gateway claim of

innocence."   *Perry v. Virginia*, No. 3:13cv327, 2013 WL 4590619 (E.D. Va. Aug. 28, 3013)

(quoting *House v. Bell*, 547 U.S. 518, 538 (2006)) (internal quotation marks omitted).   The

reviewing court considers "the probative force of relevant evidence that was either excluded or

unavailable at trial," and determines whether, in light of that evidence, the petitioner has met their

burden to prove that it is likely that "no reasonable juror would have found petitioner guilty

beyond a reasonable doubt." *Schlup*, 513 U.S. at 327-28.   If the petitioner does not prove that

likelihood with reliable new evidence, the inquiry stops.

Petitioner, while arguing he is actually innocent, has provided no new credible and

exculpatory evidence, which was not presented at trial.[9]   In his Affidavit (ECF No. 3), filed in

---

[9] Petitioner has filed multiple documents discussing his allegations, including: Motion for Judicial Notice of Actual

support of his Motion for Judicial Notice of Actual Innocence ("Actual Innocence Motion") (ECF No. 2), Petitioner argues the following: (1) Deputy Adam Miller did not meet the minimal qualifications necessary to be a law enforcement officer (Aff. 3, 41-42);[10] (2) Deputy Miller manufactured evidence at the time of the stop in order to place Petitioner under arrest (Aff. 4); (3) Deputy Miller violently assaulted Petitioner cutting off his ability to breath (Aff. 5-6); (4)Petitioner bit Deputy Miller in self-defense (Aff. 6-7); (5) Deputy Miller's DUI Checklist form indicated he had read Petitioner his Miranda warnings, while Deputy Miller testified that he never did so (Aff. 11-16); (6) there were several inconsistencies between Deputy Miller's and Lieutenant Ellis's testimony during the preliminary hearing, as well as inconsistencies between the two officers' preliminary hearing testimony and testimony at trial (Aff. 17-25, 33); (7) the officers' version of events are inconsistent with the laws of physics and improbable if Petitioner's intoxication level was as the officers testified (Aff. 27-29, 33-40, 43-44); (8) the officers denied Petitioner's request for counsel (Aff. 30-31, 43); (9) the Criminal Complaint, which contained the results of the preliminary breath test, was submitted to the General District Court of Middlesex County (Aff. 30-32); (10) Deputy Miller falsified notes used in the Criminal Complaint as well as a report written nine days after the event (Aff. 41); and, (11) the event occurred in an area lacking cameras (Aff. 44).   While Petitioner has many pages of argument on these issues, he does not dispute that he was speeding, he refused to submit to a blood or breath test, he was driving under the influence, and he bit Deputy Miller.

---

Innocence (ECF No. 2), Affidavit (ECF No. 3), Reply to Motion to Dismiss (ECF No. 11), Brief in Support of Allegations (ECF No. 12-1), Motion for Leave for Discovery and to Expand the Record (ECF No. 13), Brief in Support of Allegations II (ECF No. 15-1), Motion for Leave to Submit December 23, 2009 Transcript (ECF No. 22), December 23, 2009 Transcript (ECF No. 22), January 29, 2010 Transcript (ECF No. 15-1), and Motion for Leave to Submit Newly Discovered Evidence (ECF No. 26).   The Court has reviewed all of these filings with respect to Petitioner's allegations of actual innocence.

[10] Citations are to the page numbers of Petitioner's Affidavit, as opposed to the paragraph numbers. Pet. Aff., ECF No. 3.

Only two of Petitioner's arguments address his actual innocence of the violations: (1) Deputy Miller was not a law enforcement officer, and (2) he bit Deputy Miller in self-defense. Despite the fact that Deputy Miller was in a marked patrol car at the time of the traffic stop, and was wearing a uniform "not unlike that of a deputy sheriff," Petitioner asserts Deputy Miller was not qualified to act as a law enforcement officer. Actual Innocence Motion 4; Aff. 3. Petitioner asserts his extended questioning of Deputy Miller regarding whether he was qualified as a law enforcement officer has been omitted from the transcript. Actual Innocence Mot. 5, Ex. D-3; Br. in Support of Allegations II 14, ECF No. 15-1. To the extent Petitioner is arguing he is actually innocent of assault on a law enforcement officer because Deputy Miller was not a qualified law enforcement officer, Petitioner has offered no reliable evidence in support of this assertion that was not presented during the trial.

Secondly, while not denying that he bit Deputy Miller, Petitioner argues he acted in self-defense. Actual Innocence Mot. 4; Aff. 5-9; Mot. for Disc. 7-9; Br. in Support of Allegations II 1, 18-21. Petitioner points out the inconsistencies in the officers' testimony, and thoroughly analyzes how Deputy Miller's testimony is not credible considering the laws of physics. *Id.* Petitioner pointed out inconsistencies during his trial, and the trial judge acknowledged that the officers' testimony was inconsistent. Trial Tr. 104. While pointing out the inconsistencies more thoroughly in his filings in this Court, and discussing at length the laws of physics, Petitioner does not offer any new credible evidence to prove he acted in self-defense.

Petitioner has failed to offer any evidence to "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. Petitioner's Motion for Judicial Notice of Actual Innocence (ECF No. 2) should be DENIED, and the Court should FIND Petitioner's actual innocence claim does not provide a

19

gateway through which this court can review his claims that were procedurally defaulted in state court.   Accordingly, claims (1)-(39), claim (40)(a), claims (41) through (48), claim (49)(a), claims (50) through (67), claims (69) through (71), claim (81), claim (84), claim (87)(a), claim (89), claim (92)(a), and claims (100) through (112) should be DENIED.

**C. Standard of Review for Grounds the Supreme Court of Virginia Addressed on the Merits**

Petitioner's remaining claims are properly exhausted and may be reviewed by this Court through the lens of deference to the Supreme Court of Virginia's decision.   Under 28 U.S.C. § 2254, this Court may not grant relief on any claim that was adjudicated on its merits in State court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (2012).

A state court decision is "contrary to" clearly established federal law when a state court arrives at a conclusion opposite that of the Supreme Court on a question of law, or when a state court decides a case differently than the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision constitutes an "unreasonable application" of federal law when the court identifies the correct governing legal principle from the decisions of the Supreme Court, but unreasonably applies that principle to the facts of the case. *Id.* at 413.   A state court need not cite to, or even be aware of, relevant Supreme Court precedent "so long as neither the reasoning nor the result" contradicts or unreasonably applies the law. *Early v. Packer*, 537 U.S. 3, 8 (2002).   A state court's factual determinations are

"presumed to be correct," and a habeas petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." 28 US.C. § 2254(e)(1).   As this is a deferential standard of review, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at 386-89.

Further, this Court's review under 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).   Therefore, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 1400.

## D. Ineffective Assistance of Counsel Claims

Petitioner's properly exhausted claims, which were not procedurally defaulted, all allege ineffective assistance of counsel.   Petitioner's claims of ineffective assistance of counsel must be analyzed using the standard established by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a review of counsel's performance, to determine 1) whether it fell below an objective standard of reasonableness and 2) whether Petitioner suffered actual prejudice as a result. *Strickland*, 466 U.S. at 687-96.   The "performance prong" of review under *Strickland* requires Petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.   Petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.   The "prejudice prong" requires Petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.   In order to meet the burden of establishing a reasonable

21

probability of a different result, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.   Petitioner must show "probability sufficient to undermine confidence in the outcome." *Id.* at 694.   If a claim may be disposed of under one prong, analysis under the remaining prong is not required. *Id.*   Because these claims are presented in a petition for federal habeas review under § 2254, Petitioner must show that the state court's dismissal of his ineffective assistance of counsel claims was contrary to, or an unreasonable application of, the *Strickland* standard. 28 U.S.C. § 2254.

Petitioner's petition, while 55 pages long, states 113 conclusory claims. The petition fails to comply with the requirement of Rule 2(c) of the Rules Governing Section 2254 Cases in District Courts that the Petitioner "state the facts supporting each ground."   Rule 2(c) is more demanding than the notice pleading requirement of Fed. R. Civ. P. 8(a). *Mayle v. Felix*, 545 U.S. 644, 655 (2005).   "[I]n order to substantially comply with the Section 2254 Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." *Bullard v. Chavis*, 153 F.3d 719, 1998 WL 480727, *2 (4th Cir. Aug.6, 1998) (unpublished table decision) (quoting *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir.1990)).[11]

---

[11] On May 23, 2013, Petitioner filed a Motion for Leave to Submit a Brief in Support of Allegations, with a brief attached. ECF No. 12.   Petitioner submitted substantially the same brief to the Supreme Court of Virginia in support of his state habeas petition, but the court denied Petitioner's motion to supplement his petition. *Talbert v. Dir. of the Dept. of Corrections*, No. 121047 (Va. Nov. 14, 2012).   On June 7, 2013, Petitioner filed a second Motion for Leave to Submit a Brief in Support of Allegations with a brief attached. ECF No. 15.   This brief was not submitted in the state habeas proceeding.   The Court has allowed Petitioner to file these briefs, and has considered the briefs in determining Petitioner's claim of actual innocence.   However, these briefs cannot be considered with respect to Petitioner's claims of ineffective assistance of counsel. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-1400 (2011) (holding this Court's review under 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Therefore, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."). The Court, having reviewed these briefs with regard to Petitioner's actual innocence claim, can assure Petitioner that even if the Court could consider these briefs with respect to his ineffective assistance of counsel claims, he has not shown that the

In claim (40)(b), Petitioner alleges he was denied the effective assistance of counsel when counsel failed to inform the trial court how Petitioner came to represent himself. Petitioner's entire argument is, "Mr. Hurd did engage in Misconduct, by acting and/or failing to act, when he and Mr. Atkins failed the responsibility to tell the Court, 'how' I came to be representing myself and thereby prevented the trial Court from seeing the evidence; in that, it was an obligation to the Court." Pet. 14.[12]  Petitioner has failed to allege what counsel should have told the court, or how Petitioner was prejudiced due to counsel's failure to provide this information to the court.

In claim (49)(b), Petitioner alleges he was denied the effective assistance of counsel due to counsel's (1) failure to investigate Petitioner's claim, made during a hearing held December 23, 2009, that a document had been falsified, and (2) use of Petitioner's testimony to revoke his bail. Pet. 17. Petitioner failed to proffer what information the document contained, state in what manner it had been falsified, state what information counsel would have learned as a result of an investigation into the matter, state how he was prejudiced as a result of the alleged falsification, or explain how his testimony was used to revoke his bail.

In claims (75) and (76), Petitioner alleges he was denied the effective assistance of counsel due to counsel's failure to act with the requisite level of competency required by the "Disciplinary Rules" and failed to take "an appropriate course of action" for Petitioner. ECF No. 1 at 37. Petitioner failed to proffer how counsel violated the "Disciplinary Rules," or what "appropriate course of action" counsel failed to take.

In claims (77) and (78), Petitioner alleges he was denied the effective assistance of counsel because counsel compelled Petitioner to go forward with a hearing on December 2, 2009, despite the fact that counsel was not prepared, and then failed to act when the trial court admonished

state court's dismissal of these claims was an unreasonable application of the *Strickland* standard.

[12] Claim 40(a) addresses Petitioner's allegations regarding Mr. Hurd's conduct.

23

Petitioner for acts and omissions that were not committed by Petitioner.  Petitioner failed to proffer how counsel was unprepared for the hearing, how counsel compelled him to go forward with the hearing, the trial court's alleged admonishments, how counsel should have responded, or how Petitioner was prejudiced as a result.

In claim (79), Petitioner alleges he was denied the effective assistance of counsel because counsel was indifferent toward his case, and in claim (88), Petitioner alleges he was denied the effective assistance of counsel because counsel failed to investigate his case. The claims contain no facts in support, as Petitioner failed to proffer how counsel was indifferent toward his case, failed to proffer what information counsel would have learned had he properly investigated the case, and failed to explain how he was prejudiced as a result.

In claims (80), (82), (83), (85), (86), (87)(b), and (90) Petitioner alleges he was denied the effective assistance of counsel during the December 23, 2009 hearing, where counsel made a joint motion with the prosecutor to have Petitioner incarcerated for a mental competency evaluation. Petitioner asserts counsel induced Petitioner to proceed with the hearing without advising Petitioner of his agreement with the prosecutor to have Petitioner incarcerated (Claim 80); abandoned Petitioner during the hearing by testifying that Petitioner should be incarcerated (Claims 82, 83 and 86); misdirected the Court to deflect allegations that counsel perjured himself at the December 2, 2009 hearing (Claim 85); and, conspired with the prosecutor and manipulated the trial court into incarcerating Petitioner for purposes of a competency evaluation (Claims 87(b) and 90).

A review of the record reveals Petitioner's counsel and the prosecutor made a joint motion to the court that Petitioner be committed for a psychological evaluation to determine his competency to proceed to trial; in addition, his counsel asked that the evaluation also determine his

24

competency at the time of the offense.   As this was a joint motion, it can be presumed the prosecutor would have made the motion whether or not Petitioner's counsel joined in the motion. In addition to failing to proffer facts in support of these claims, Petitioner has offered no evidence that a mental evaluation would not have been performed if his counsel had not joined the motion, and failed to show how the outcome of his trial would have been different if the evaluation did not occur.

In claim (92), Petitioner alleges he was denied the effective assistance of counsel because counsel violated his constitutional rights pursuant to 18 U.S.C. §§ 241 and 242[13] when he acquiesced to be stand-by counsel.   Petitioner failed to proffer how counsel violated 28 U.S.C. §§ 241 and 242, or set forth how the alleged violation prejudiced him.

In claim (93), Petitioner alleges he was denied the effective assistance of counsel because counsel did not communicate with him, and his conflict of interest was so great that it could not be reconciled. Petitioner failed to proffer what communications should have occurred, the content of such communications, or how he was prejudiced as a result of the alleged lack of communication.

In claims (94) and (95), Petitioner alleges he was denied the effective assistance of counsel because counsel's actions were contrary to his duties to Petitioner, and counsel was the proximate cause of Petitioner's injuries.   Petitioner failed to proffer what actions counsel allegedly took, how such actions violated any duty counsel owed Petitioner, or how counsel injured Petitioner.

In claims (97), (98) and (99), Petitioner alleges he was denied the effective assistance of

---

[13] Title 18 U.S.C. § 241 prohibits two or more people from conspiring "to injure, oppress, threaten, or intimidate any person" in the exercise or enjoyment of the rights and privileges secured by the Constitution or laws of the United States. 18 U.S.C. § 241 (2012).   Title 18 U.S.C. § 242 prohibits the deprivation of rights under color of law, providing in pertinent part, "[w]hoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens" shall be punished. 18 U.S.C.§ 242 (2012).

counsel because counsel ignored information during the preliminary hearing that demonstrated Petitioner's innocence, specifically Deputy Miller's testimony, which was "grossly improbable." Petitioner has failed to proffer how counsel ignored the information or how he was prejudiced as a result.

With respect to each of these claims, the Supreme Court of Virginia held Petitioner failed to satisfy either prong of the *Strickland* standard. Resp. Br. Ex. A at 12-22; ECF No. 9-1.   The claims fail to comply with the requirement of Rule 2(c) of the Rules Governing Section 2254 Cases in District Courts that the Petitioner "state the facts supporting each ground."   The Supreme Court of Virginia's ruling is not contrary to or an unreasonable application of *Strickland*, and it does not rest upon an unreasonable finding of facts. *See* 28 U.S.C. §§ 2254(d)(1)-(2). Accordingly, claims (40)(b), (49)(b), (75), (76), (77), (78), (79), (80), (82), (83), (85), (86), (87)(b), (88), (90), (92)(b), (93), (94), (95), (97), (98), and (99) should be DENIED.

In claim (113), Petitioner alleges he was denied the effective assistance of counsel because appellate counsel failed to prepare, investigate and consult with Petitioner on the appeal; "induce[d]" Petitioner to waive his right to counsel; obstructed Petitioner's access to transcripts, dated December 2, 2009, December 23, 2009, January 29, 2010, and, March 15, 2010; failed to "investigate into Petitioner's present sentence regarding the actual amount of time he had to serve, before making critical judgments or decisions;" and, failed to correct or investigate missing portions of transcripts, which "bore directly on the outcome of trial." The Supreme Court of Virginia considered these claims on the merits and held Petitioner failed to satisfy either prong of the *Strickland* standard. Resp. Ex. A 22-26.

Petitioner has failed to proffer what appellate counsel's investigation into Petitioner's present sentence regarding the actual amount of time he had to serve would have revealed, or how

he was prejudiced due to counsel's failure to investigate.   Petitioner has also failed to proffer what portion of the transcript is missing or how it bore directly on the outcome of the trial.   Petitioner's primary assertion in Claim (113) appears to be that his counsel was ineffective because counsel did not discuss with him the issues to raise on appeal, failed to obtain the transcripts Petitioner requested, and failed to raise on appeal the issue of whether Petitioner waived his right to counsel.

On appeal, counsel raised the issues of sufficiency of the evidence and speedy trial, but did not appeal the issue of waiver of counsel.   In ruling that Petitioner failed to meet his burden under either prong of the *Strickland* standard, the Supreme Court of Virginia pointed *to Jones v. Barnes*, 463 U.S. 745 (1983), which held that issues for appeal are left to the discretion of counsel and counsel has no burden to raise every issue on appeal. *Id.* at 751-52. Applying the doubly deferential standards established in the AEDPA and *Strickland*, this court must determine "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Moore v. Hardee*, 723 F.3d 488, 495-96 (4th Cir. 2013) (quoting *Harrington v. Richter,* 131 S.Ct. 770, 788 (2011)).   The petition can be granted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e] Court's precedents." *Id.*

The Court finds that the Supreme Court of Virginia reasonably applied the United States Supreme Court holding in *Jones v. Barnes* to this case. The issues raised on appeal are strategic decisions that lie with counsel. For these reasons, the Court cannot grant relief on this ground and claim (113) should be DENIED.

### III. <u>RECOMMENDATION</u>

The Court recommends that Petitioner's Motion for Judicial Notice of Actual Innocence (ECF No. 2) be DENIED, Respondent's Motion to Dismiss be GRANTED (ECF No. 7),

Petitioner's petition for writ of habeas corpus be DENIED (ECF No. 1), and the claims be DISMISSED WITH PREJUDICE.

Ground (1) should be DENIED because it was not raised before the Supreme Court of Virginia, and would be procedurally defaulted in state court if raised now, and thus Ground (1) is simultaneously exhausted and procedurally defaulted.

Claims (1)-(39), claim (40)(a), claims (41) through (48), claim (49)(a), claims (50) through (67), claims (69) through (71), claim (81), claim (84), claim (87)(a), claim (89), claim (92)(a), and claims (100) through (112) should be DENIED because the claims are procedurally defaulted, and Petitioner's actual innocence claim does not provide a gateway through which this court can review his claims that were procedurally defaulted in state court.

Claims (40)(b), (49)(b), (75), (76), (77), (78), (79), (80), (82), (83), (85), (86), (87)(b), (88), (90), (92)(b), (93), (94), (95), (97), (98), (99), and (113)[14] should be DENIED because the Supreme Court of Virginia's dismissal of these ineffective assistance of counsel claims was not contrary to or an unreasonable application of *Strickland*, and did not rest upon an unreasonable finding of facts.

## IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules.   A party

---

[14] There are no substantive claims numbered 68, 72-74, 91, or 96. *See supra* notes 5-8.

may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).


                                            _____/s/_____
                                                      Tommy E. Miller
                                              United States Magistrate Judge


Norfolk, Virginia
January 27, 2014

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Richard M. Talbert
12508 Dogwood Trail
Gloucester, VA 23061

David M. Uberman, Esq.
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219

Fernando Galindo, Clerk

By _____
    Deputy Clerk

January ____, 2014

30